UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

IN RE:                                                CASE NO.: 11-21265-AJC

NEW LIFE HOLY GHOST                                   Chapter 11
DELIVERANCE MINISTRIES, INC.,
a Florida non-profit corporation

        Debtor(s).
_____/


# 2nd Amended
# DISCLOSURE STATEMENT


Robert C Meyer, PA
2223 Coral Way
Miami, FL 33145
(305) 285-8838

# Index

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-10

**BRIEF DISCLOSURE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

**BRIEF EXPLANATION OF CHAPTER 11** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**VOTING ON THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

**CONFIRMATION HEARING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CONFIRMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

**CONFIRMATION METHODOLOGY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**PREPETION EVENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**POST-PETITION EVENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**SOURCE OF FUNDS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PRIORITY CREDITORS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CLASSES OF CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PLAN OUTLINED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

**EVENT OF DEFAULT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**DUTIES UPON CONSUMMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**IMPAIRED CLASSES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**LIQUIDATION ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

**ANALYSIS OF CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**ANALYSIS OF ESTATE PROPERTY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**PERSONAL PROPERTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**BOOKS AND RECORDS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**EXECUTORY CONTRACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TAX ASPECTS OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

**TAX CONSEQUENCES TO DEBTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

**DOCUMENTARY STAMP ISSUES FOR**
**TRANSFER AND RECORDING NEW LOAN DOCUMENTS** . . . . . . . . . . . . . . . . . 21

**LITIGATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**MANAGEMENT OF THE DEBTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**INFORMATION OBTAINED BY PLAN PROPONENT** . . . . . . . . . . . . . . . . . . . . . . . 21

**MODIFICATION OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**EFFECTIVE DATE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**SUMMARY OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

**AMENDMENT OF CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**JURISDICTION OF THE COURT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

## **DEBTOR-IN-POSSESSION DISCLOSURE STATEMENT**

COMES NOW, the Chapter 11 Debtor-in-Possession, who submits this Disclosure Statement (as required by 11 U.S.C. § 1125) to the creditors which is filed with the Debtor's Plan of Reorganization.  The Debtor, for the purpose of disclosing information which the bankruptcy court as well as the Bankruptcy Code determines to be material and important for creditors or claimants, submits this document so as to provide creditors or claimants the opportunity to make a informed decision in exercising their right to vote on the Plan.  The Bankruptcy Reorganization pursuant to Chapter 11 of the Bankruptcy Code depends upon receipt of a sufficient number of votes in favor of the Plan.  Your vote, therefore, is important.

This Disclosure Statement describes various transactions.  A copy of the Plan of Reorganization accompanies this Disclosure Statement.  Defined terms are capitalized in both the Plan and the Disclosure Statement.   Those defined terms are in the succeeding portion of this Disclosure Statement.

## **DEFINITIONS**

**2451 NW 79 Street, Miami, FL 33147** – means the address of the Real Property.

**Accountant** – shall mean accountant authorized under applicable law to practice public accounting, and includes professional accounting association, corporation, or partnership, if so authorized, and is included as a Professional.

**Adjusted Principal Debt** – shall mean the amount of the principal determined by agreement or by court order for collateral pledged to a mortgagee, as adjusted to be the fair market value of the property at the time of the filing of the Petition. The New Loan Documents shall have a principal obligation of the Adjusted Principal Debt.

**Administrative Claims** – shall mean (i) Claims unpaid on the Effective Date, arising out of operation of the Debtor's business during these Proceedings and which are scheduled for payment in the ordinary course of the ongoing business operations of the Debtor, or (ii) Claims of Professionals employed by the Debtor for fees and expenses which have not yet been approved by the Court or which are scheduled for payment upon Court approval.

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 2

**Allowed**  **–** means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to this Plan; and, (ii) with reference to any Claim or Administrative Expense Claim, (a) any Claim or Administrative Expense Claim that is the subject of a timely filed proof of Claim or request for an Administrative Expense Claim as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Administrative Expense Claim expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense Claim" shall not include interest on such Claim or Administrative Expense Claim from and after the Petition Date.

**Allowed Administrative Expense Claim** – shall mean an Allowed Claim for which a Claimant asserts, and is determined to be entitled to, priority pursuant to Sections 503 and 507(a)(1) of the Bankruptcy Code, except Administrative Trade Claims.

**Allowed Claim** – shall mean a Claim against the Debtor that (i) is allowed by a Final Order, (ii) is scheduled as liquidated, undisputed and non-contingent by the Debtor in its Schedules of Assets and Liabilities filed with the Bankruptcy Court, as they may be amended or supplemented (collectively, the "Schedules") or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof within a time fixed by the Bankruptcy Court and the Claim is not otherwise a

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 3

Disputed Claim.

**Allowed Priority Tax Claim** – shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**Allowed Secured Claim** – shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under Section 553 of the Bankruptcy Code, but in any event only to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property or to the extent of the amount subject to such setoff as the case may be.

**Allowed Unsecured Claim** – shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commending there Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in our encumbrance against property of the Debtor or a right of setoff to secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court.

**Anniversary Date –** shall mean the date corresponding to the Confirmation Date, beginning in the first year after said Confirmation Date and continuing on the same date of each subsequent year.

**Anniversary Month** – shall mean the month corresponding to the month in which the Confirmation Date falls, beginning in the first year after Confirmation Date and continuing in each subsequent year.

**Appraisal** – shall mean the value of the property of $826,500.00 pursuant to court order [DE 54]

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 4

**Attorney** – shall mean attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law. Bankruptcy Attorney is the offices of Robert C. Meyer, P.A.

**Bankruptcy Code** – shall mean the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. and all amendments thereto.

**Bankruptcy Court or Court** – shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Proceedings were filed or such other court as may hereafter have jurisdiction of and act with respect to the Proceedings.

**Bankruptcy Rules** – shall mean the Federal Rules of Bankruptcy Procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

**Bar Date** – shall mean the date set by the Bankruptcy Court as the last day for filing Proofs of Claim against the Debtor. August 31, 2010 is established as such date in DE 4.

**Causes of Action** – shall be used in its broadest sense and shall include all causes of action of the Estate and all causes of action which a Trustee would have if the Proceedings were converted on the Confirmation Date to a proceeding under Chapter 7 of the Code and a Trustee were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the Confirmation Date, as well as rights belonging to the Debtor pursuant to Sections 506, 510, 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

**Chapter 11** – Shall mean the Eleventh Chapter of Title 11, also known as The Bankruptcy Code.

**Chapter 11 Petition** – shall refer to the voluntary petition filed by the debtor before this court on April 27, 2011.

**Claim** – shall mean any right to payment against the Debtor or right to an equitable

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 5

remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

**Claimant** – shall mean the holder of a Claim.

**Class** – shall mean any group of substantially similar Claims as classified in the Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

**Confirmation** – shall mean the entry of an Order of the Bankruptcy Court confirming this Plan.

**Confirmation Date** – shall mean the date upon which the Confirmation Order is entered by the Court after a hearing conducted pursuant to Section 1128 of the Bankruptcy Code.

**Confirmation Order** – shall mean the order of the Bankruptcy Court confirming the Plan.

**Conclusion** – shall mean the rights afforded to the Debtor under § 1129(b).

**County Tax** – shall mean the taxes on real property which are secured under Florida Statute.

**Creditor** – shall have the meaning set forth in Section 101(10) of the Bankruptcy Code or more simply a Person or Entity with a right to request money from the estate.

**Current Market Value** – shall mean the value of the Real Property. The value is deemed to be $826,500.00 pursuant to Court Order [DE 54].

**Debt** – shall  mean liability on a Claim.

**Debtor** – shall mean New Life Holy Ghost Ministries, Inc.

**Debtor-in-Possession** – shall mean the Debtor.

**Debt Service** –  shall mean the amount required, ordinarily owed on a monthly basis, of the Debtor to maintain himself current on a Mortgage Obligation.

**Deficiency** – shall mean the difference between all amounts obtained by Mortgagee(s) in foreclosure of any of the Real Properties, after confirmation of the Plan and Default

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 6

of the same, from the Adjusted Principal Debt.

**Distribution** – means the payment or distribution under the Plan of property of the Estate or interests in property of the Estate to the Holders of Allowed Claims or Interests.

**Disclosure Statement** – shall mean the 2nd Amended Disclosure by the Debtor-in-Possession of the debtor's business to the Creditors to provide the parties with the disclosure required under Chapter 11 of Title 11 of the United States Code.

**Disputed Claim** - shall mean any Claim which is scheduled as disputed or as to which an objection has been filed but has not been resolved by Order of the Bankruptcy Court prior to the Effective Date.

**Disputed Claims Reserve** – shall mean the reserve of cash to be disbursed pursuant to this Plan and established pursuant to this Plan for Disputed Claims in each Class of Claims which will receive cash under this Plan.

**Effective Date** – shall mean the first day occurring on or after the 14th day following the Confirmation Date, unless the Confirmation Order is stayed pending appeal, in which case the Effective Date shall be the first business day after the stay is vacated or as soon thereafter as is practicable.

**Entity** – shall include person, estate, trust, governmental unit, and United States trustee.

**Estate** – shall mean the estate created by § 541 of the Bankruptcy Code upon the filing of the Chapter 11 Petition with the Bankruptcy Court in this Proceeding. It shall also mean the rights of the Debtor or other assets of the Bankruptcy Proceeding.

**Equity holders** – the Debtor is a nonprofit entity which does not have shareholders. Instead, the ownership interest will be called "Equity Holders." The ownership interest of the Debtor will change upon confirmation. The unsecured creditors who are in Class 5, will not receive payment that will satisfy them in full. They will only receive approximately 14% of their claims. This is merely because the mortgagee will have a deficiency unsecured claim. The Debtor will deliver 86% of the beneficial ownership

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 7

interest to the unsecured creditors.  The ownership interest will be without any rights to make changes to the corporate entity.  They will be exclusively investors of the Debtor entity.  The details of this ownership interest will be explained further in the plan.  Ultimately, when a sale occurs of this property, if ever, that particular interest will be paid pursuant to a formula described later in the plan.

**Fair Market Value** –  shall be the value of Real Property at the time of the Petition Date less 10% which rounded sum represents costs associated with Seller's obligations which are customarily paid by Sellers in the real estate industry in Miami-Dade County, Florida.

**Final Order** – shall mean an Order or judgment that has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and no appeal or petition for certiorari review or rehearing is pending, or (ii) if appeal, review, reargument, rehearing or certiorari of the Order has been sought, the Order has been affirmed or the request for review, reargument, rehearing or certiorari has been denied and the time to seek a further appeal, review, reargument, rehearing or certiorari has expired, as a result of which such Order shall have become final and nonappealable in accordance with applicable law.

**First Mortgagee** – shall mean Foundation Capital Resources, Inc.

**Foundation Capital** - shall mean the First Mortgagee.

**Impaired Class** – shall have the meaning set forth in 11 U.S.C. § 1124.  A Class is impaired if the legal, equitable and contractual right to which the Claim is entitled are altered.

**Initial Distribution** – shall mean the initial payment, if any, to each Class.

**IRS** – shall mean the Internal Revenue Service.

**Judicial lien** – shall  mean a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

**Lien** – shall mean any charge against or interest in property to secure payment of an

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 8

Allowed Claim and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust and statutory lien as defined in the Bankruptcy Code or any applicable state or federal law.

**Mortgagee** – shall mean person, entity or financial institution or anyone which has loaned money to the Debtor and has recorded a Mortgage instrument in Miami-Dade County, Florida in appropriate fashion and by the requisite laws of the state of Florida.

**Mortgage Final Judgment** – shall mean the Final Judgment of foreclosure entered in favor of Foundation on March 3, 2011.

**Mortgage Obligation** –  shall mean the principal obligation owed to the Mortgagee as well as the monthly amount owed to keep current the debt with the Mortgagee.

**Order** – shall mean an Order or judgment of the Bankruptcy Court as entered on the docket.

**Party in Interest** – shall mean a person who ultimately benefits from the outcome of this Plan.

**Personalty** – shall mean the Personal Property of the estate worth $1,000.00.

**Person** – shall  include individual, partnership, and corporation.

**Petition** – shall  mean the petition filed under section 301, 302, 303, or 304 of this title [11 USCS § 301, 302, 303], as the case may be, commencing a case under this title which date is April 27, 2011.

**Petition Date** – shall mean April 27, 2011. [DE 1]

**Plan** – shall mean the 2nd Amended Plan of Reorganization which shall create a binding contractual relationship between the debtor with his Creditors and same may be amended or supplemented upon appropriate notice and in conformance with the Bankruptcy Code as well as the Rules of Bankruptcy Procedure – note  it may be further amended or modified and all addenda, exhibits, schedules or other attachments.

**Plan Period** – shall mean the period of time required to make the disbursements contemplated in the Plan.

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 9

**Pro Rata** – shall mean the proportion an Allowed Claim in a particular Class bears to aggregate amount of all Allowed Claims in such Class except as otherwise specified herein.

**Proceeding or Proceedings** – shall mean the case for reorganization of the Debtor pending in the Bankruptcy Court.

**Professionals** – shall mean entities retained or to be compensated pursuant to sections 326, 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code.

**Property** – shall mean the Real Property located at Miami-Dade County, Florida which is the asset of the Debtor – street address 2451 NW 79 Street, Miami, FL 33147.

**Proponent** – shall mean the Debtor.

**Real Property** – shall mean the Real Property located at Miami-Dade County, Florida which is the asset of the Debtor – street address 2451 NW 79 Street, Miami, FL 33147.

**Relative** – shall  mean an individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree.

**Rents** –  mean revenue derived from payment, usually of an amount fixed by contract, made by a tenant at specified intervals in return for the right to occupy or use the Real Properties.

**Reorganized Debtor** – shall mean the Debtor in its restructured and reorganized forms as of and after the Effective Date.

**Sale** – shall mean any sale authorized by the Court of the Debtor's assets or Estate under 11 U.S.C. § 363.

**Scheduled** – shall mean set forth in the Schedules of Assets and Liabilities.

**Schedules or Schedules of Assets and Liabilities** – shall mean the Schedules of Assets and Liabilities filed by the Debtor with the Bankruptcy Court, as the same have been or may be amended form time to time prior to the Effective Date.

**Secured Creditors** –  are those creditors listed in the various classes in the plan whom the debtor does not dispute the veracity, extent or priority of the lien against

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 10

various property named or titled in the name of the debtor.

**Security Agreement** – shall  mean an agreement that creates or provides for a security interest.

**Undersecured Mortgagee or Undersecured Mortgage** – shall mean Foundation Capital.

**U.S. Trustee** –  means the United States Trustee  appointed under section 581, title 28, United States Code to serve in the Southern District of Florida.

## BRIEF DISCLOSURE

**THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH SEC. 1125 OF TITLE 11 OF THE UNITED STATES CODE.  IT IS TO PROVIDE "ADEQUATE INFORMATION" TO THE CREDITORS IN THIS PROCEEDING. CREDITORS ARE URGED TO CONSULT WITH OWN INDIVIDUAL COUNSEL OR EACH OTHER AND TO REVIEW ALL OF THE PLEADINGS BEFORE THIS COURT TO FULLY UNDERSTAND THE DISCLOSURE, ANY PLANS OF REORGANIZATION, OR ANY OTHER PERTINENT MATTERS.   ANY INTELLIGENT JUDGMENT CONCERNING THE PLAN IS DEPENDENT UPON AN UNDERSTANDING OF THE DISCLOSURE STATEMENT.**

**THE FOREGOING IS A BRIEF SUMMARY OF THE HIGHLIGHTS OF THE PLAN AND CONFIRMATION OF SUCH, AND THIS FOREGOING SUMMARY SHOULD NOT BE RELIED EXCLUSIVELY FOR VOTING PURPOSES.  CREDITORS ARE URGED TO CONSULT THEIR OWN COUNSEL BEFORE FILING A BALLOT AS TO THE PLAN OF REORGANIZATION.**

Your are urged to study the Plan in full and to consult with your counsel about the Plan and its effect, including possible tax consequences as well your legal rights. Please read this Disclosure Statement carefully before voting on the Plan.

The financial information contained herein is not covered by a certified audit of independent public accountants.  For this reason, the Debtor is unable to represent

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 11

that the information contained in this Disclosure Statement is without inaccuracy, although reasonable efforts have been made to present the information fairly and accurately. Additional financial information can be found in the Debtor's Statement of Financial Affairs, bankruptcy schedules, and other reports which have been filed in this bankruptcy case.

Except as expressly provided herein, portions of this Disclosure Statement describing the Debtor or the Debtor in Possession, his business, and the Plan had been prepared from information furnished by the Debtor.

## BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is a reorganization chapter of the Bankruptcy Code. A debtor is authorized to reorganize or liquidate its business for the benefit of the Creditors. Upon the filing of a Petition, the Creditors or other Claimants are stayed from continuing with their collection efforts toward foreclosing upon the debtor's personal property or real property.

In this case, the Debtor's filing stayed all foreclosures against the Real Property. And, upon Confirmation of this case, the property of the estate will vest in the name of the Debtor as permitted under 11 U.S.C. § 1107(a).

## VOTING ON THE PLAN

A Plan is the principal purpose of a Chapter 11 reorganization proceeding. However, liquidation of the Debtor's assets is also permitted under Chapter 11. The Plan is a vehicle through which the Creditors' claims are satisfied or paid at their fullest. Each Creditor is entitled to vote on the Plan and may cast his vote for or against the Plan by completing, dating and signing the Ballot which shall accompany the Plan. The Bankruptcy Court will, by separate order, require that the Ballots and Objections to Confirmation of the Plan be received by the offices of Robert C. Meyer, P.A., 2223 Coral Way, Miami, FL 33145 no later than 5:00 o'clock p.m. on the date set forth in the

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 12

Ballot and the Order which will accompany this Disclosure Statement, Plan and any other items required by the Court.

This Disclosure Statement is intended to assist Creditors in evaluating the Plan and determining whether to accept the Plan.  UNDER THE BANKRUPTCY CODE YOUR VOTE FOR ACCEPTANCE OF REJECTION MAY NOT BE SOLICITED UNLESS YOU RECEIVE A COPY OF THIS DISCLOSURE STATEMENT PRIOR TO, OR CONCURRENTLY WITH, SUCH SOLICITATION.  THE SOLICITATION OF VOTES ON THE PLAN IS GOVERNED BY 11 U.S.C. § 1125(b).  VIOLATION OF § 1125(b) MAY RESULT IN SANCTIONS BY THE COURT, INCLUDING DISALLOWANCE OF THE SOLICITED VOTE AND LOSS OF THE "SAFE HARBOR" PROVISIONS OF 11 U.S.C. § 1125(e).

Impaired classes are important for voting purposes.  In this case, classes 2 - 5 are definitionally impaired under the Plan.  Therefore, those classes will have their votes counted and reported.  Votes n the Plan will only be counted for those claims that are originally listed as disputed, contingent or unliquidated or for those claims which have filed a proof of claim who were listed as either disputed, contingent or unliquidated.  If a Claim has not been disallowed or suspended prior to the vote.  It will count, unless subjected to an order of the court stating otherwise.

NOTE: THE BALLOT DOES NOT CONSTITUTE A PROOF OF CLAIM.

## CONFIRMATION HEARING

The Bankruptcy Court will schedule a hearing on confirmation of the Plan to determine if the Plan has been accepted and whether or not there are records of number of Creditors and whether the other requirements necessary for Confirmation have been satisfied.

## CONFIRMATION

At the Confirmation Hearing the Bankruptcy Court will determine, among other things, whether the Plan has been accepted by the impaired classes, or other issues under 11 U.S.C. § 1126, and impaired classes are deemed to have accepted the plan

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 13

if two events occur: a) that two thirds (2/3) in the dollar amount have voted for the Plan; and b) more than one half (½) in the number of allowed claims have voted to accept the Plan.

If one impaired class votes for the Plan and all the others do not or any portion of the remaining impaired classes do not, the Plan may still be accepted.

## CONFIRMATION METHODOLOGY

The easiest method for tabulating the plan would be for all the impaired classes to vote in approval of the same. However, this is not the only method for confirmation. The alternative confirmation methodology is deemed the "nonacceptance" method – cramdown. The Plan, although not accepted by all impaired classes, may be deemed by the court to be fair and equitable to the classes or Creditors who object to the Plan. This particular nonacceptance methodology for confirmation, which requires at least one class of impaired classes to vote for the plan, follows the procedures outlined in the Bankruptcy Code.

Section 1129(b) provides that the court may confirm the Plan notwithstanding rejection by one or more of the impaired classes as follows:

First, the court will need to see if the class involves a Secured Creditor. If a Secured Creditor wants to have an "equitable test" of its rights reviewed, the court will look to the following:

a.     Whether or not the plan allows the Secured Creditor to retain its lien or liens and receive cash payments having a precedent priority equal to its allowed secured claims;

b.     Receive the proceeds from the sale of its collateral;

c.     Realize the "indubitable equivalent" of its Claim.

The last provision recited above is a bankruptcy-guided concept. The term, "indubitable equivalent" has been touched upon by many cases in the bankruptcy forum and jurisprudence in regard to the same is so vast that it cannot be explained

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 14

in this Disclosure Statement.  If the Bankruptcy Court orders Confirmation of the Plan under this particular provision, pursuant to 11 U.S.C. § 1141(d), the Debtor would be discharged from all pre-Confirmation debts except as provided in the Plan. Confirmation of the Plan is binding upon the Debtor, as well as the Creditors and other parties.  Anybody who is deemed to be a Party of Interest will be bound by the Plan.

## **PRE-PETITION EVENTS**

The Debtor is an organized Church which saw great growths in its business prior to the bankruptcy.  To accommodate the larger congregation, the Church decided to buy an unimproved parcel of real estate and erect a building on the site.

Foundation was an organization which specialized in handling loans for Christian ministries, and delivered funds to the Debtor to aid in the purchase and development of the church building.  Unfortunately, a few events occurred which created problems.

The first was the quality of the construction. The building's roof never seemed to hold off the rain and other elements, and ultimately litigation ensued about the same.

While the building was not finished, the payments to Foundation remained. Foundation's loan was significant, and without the ability to use the premises for which the debt arose, the church encountered significant problems.

Compounding the problems was the economy.  Numerous parishioners lost their jobs, and either could not attend church, give to the church, or be as generous with their gifts as they had been before the economy's collapse.  The church effectively watched its parish shrink in number, drop in gifts, and all of this occurred while the debt to Foundation was at its highest.

Attempts to negotiate the loan with Foundation could not be met as attempts to gather income to pay the debt succumbed to economic woes.

When a settlement payment to Foundation was made, it failed because a creditor garnished the account and took the money from the account.

Foundation foreclosed on the property.  The Debtor gave a mild defense and

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 15

hoped for other sources of income.  It could not happen.  Since that time, income has increased, and the Debtor hopes for more.

## POST-PETITION EVENTS

The bankruptcy petition was filed on April 27, 2011 [DE1].  The Debtor moved rapidly in this case. A Motion to Value was filed on May 5, 2011 [DE 8] outlining that the property's value is not greater than the debt owed to Foundation Capital.  A Motion for Stay Relief was filed on May 18, 2011 [DE 15].  Both motions were set for initial hearing on June 8, 2011. The Motion to Value finalized with an agreed order [DE 54} and the Motions to Dismiss and obtain Stay Relief were continued to coincide with hearings on the confirmation. The first meeting of creditors was scheduled for June 2, 2011 [DE 11] and concluded.

## SOURCE OF FUNDS

The majority of the funds will be provided by the following: (a) future Rents from the unaffiliated church – Rehoboth International Faith Center ; (b) operational revenue from a school which has operated in the past by the Debtor, but issues of the buildings compelled operations to cease and the school is presently being operated at a nearby property and will move to the Debtor's facilities when capable; (c) collections by the church on a weekly basis; and (d) revenue derived from concerts and special giving(s) – car washes or other events –  each operating from the Real Property. Attached hereto as **Exhibit "B"** is the projected income and expenses for the Real Property.  The revenues vary monthly, and the attached sheet is an estimated average.

## PRIORITY CREDITORS

None are known to exist. This would be for unsecured taxes owed to Miami-Dade County authorities or Florida authorities.  Neither has filed a claim in this estate.

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 16

## CLASSES OF CLAIMS

The are only a few classes of claims:

Class 1:     Priority Creditors

Class 2:     Secured – IRS for Federal taxes on personalty for $1,000.00

Class 3:     Secured Creditor – Foundation Capital

Class 4:     Unsecured Nonpriority Creditors accepting $50.00 as full payment of claim

Class 5:     Unsecured Nonpriority Claims

Class 6:     Holders of equitable interests (title to the Real Property)

## PLAN OUTLINED

The Plan proposes to have the mortgage lien of Foundation Capital  be adjusted.

For purposes of clarification, upon either agreement or adjudication as to the amount of debt owed by Debtor to Foundation Capital has been established.

The IRS debt for taxes shall be paid over a period of 5 months in equal monthly installments of approximately $200.00.

Unsecured creditors electing $50.00 waive any claims in Class 5 and accept $50.00 as full satisfaction of their debt.

General nonpriority unsecured  creditors shall be paid pro rata from the identifiable amount paid in the plan of $120,000 over 10 years.  It is estimated that this payment could exceed 14% of the allowed unsecured debt. Class 5 will also receive 43% interest in the property through a trust. Class 6 will receive 57% interest in the property through a trust.

## EVENT OF DEFAULT

Foundation Capital will not lose its security interest against the Real Property. The effect of the Plan will be to adjust the debt and restructure.   If there is a post-confirmation default – that the Debtor fails to make payments to the creditors in accordance with the terms and conditions recited below as well as in the Plan – in the

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 17

future by the Debtor as to the Real Property, Foundation Capital may seek foreclosure against their Real Property.   All other nonpriority creditors will have remedies of unsecured creditors.

## DUTIES UPON CONSUMMATION

Upon the Debtor-in-Possession finalizing Initial Payments to all Creditors, an affidavit of full payment shall be made by the third party handling the affairs (or the Debtor if the Creditors permit the Debtor-in-Possession to run the business)

## IMPAIRED CLASSES

Classes 1 appears not to be impaired.  All other classes are impaired: classes 2, 3, 4, 5 and 6.

## LIQUIDATION ANALYSIS

A liquidation of the Real Property will be to the Creditor's demise. First, the best value that could be received would be  Market Value as opposed to Liquidation Value. Therefore, the proposed Plan delivers a higher value to creditors than a liquidation. Second, REO departments holding repossessed real estate are overflowing in Miami-Dade County, Florida.  No lender seeks to add to the already overfilled stockpile of real estate inventory at the REO departments. Additions to the already satiated repossessions only  lessen the Real Property's  liquidation value. This real estate debacle is being further aggravated as the real estate market inventory increases with new inventory – record-breaking developments are simultaneously being built in  the rest of South Florida while repossessions hit alarming rates. This concurrent event further depreciates the liquidation value as purchasers more often choose to purchase the newer and less straining inventory which should be delivered "turn key" "modern" and with full warranty.  In 2011, even the "new" inventory is not  adequately selling.

The liquidation of the debt would deliver the no assets to the unsecured parties.

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 18

The value of the real estate is less than the debt owed to the First Mortgagee.

If, for some unknown reason, money exceeding the amount of the Secured Creditors' claims exists, the remainder would be paid to any Priority Creditors or Administrative Creditors.  It is believed that there will not even be money for these groups of Creditors in liquidation.  It is further believed that if there is any money, it will be far less than whatever Administrative or Priority Creditors exist.

If, concluded, the Chapter 7 administrative priorities would be entitled to be paid in full.  Then, the next layer to be paid would be the Chapter 11 Administrative Creditors who have not been fully  paid.  The Debtor doubts that there will be any money available for this group of Creditors.  In short, a conversion would make this an administratively insolvent estate.

 As stated above, it is believed that no less than two or three rungs of the ladder of priorities will also be unpaid if liquidation occurs as the value of the assets are deemed to be drastically less than the value of the outstanding secured debt.  In liquidation, the Real Property, will not be of any assistance or aid to the Unsecured Creditors.

The Debtor has proposed the Plan in the most practical means of providing a reasonable distribution to Creditors.  The aggregate distribution to the impaired classes of Unsecured Creditors will be greater than the distribution which these Creditors might receive under any liquidation.

## ANALYSIS OF CLAIMS

Proofs of claim are as follows:

| # | Claimant | Unsecured | Secured | Priority | Disputed? |
|---|----------|-----------|---------|----------|-----------|
| 1 | Miami-Dade | | $129.43 | | |
| 2 | NRS | $32,289.50 | $7,000.00 | | |
| 3 | Ally | | $22,201.90 | | Yes |
| 4 | Great American Leasin | $22,506.24 | | | |
| 5 | FIA Card | $6,416.86 | | | |
| 6 | IRS | $42,217.15 | $1,000.00 | $71,163.73 | Yes |

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 19

| 7 | Citibank | $2,735.21 | | |
| 8 | Citibank | $1,744.03 | | |
| 9 | Foundation | $755,862.07 | $826,500.00 | |
| 10 | Ford | $15,746.76 | | Yes |
| 11 | BMW | | $20,717.34 | Yes |
| | | | | |
| TOTAL | | $879,517.82 | $877,548.67 | $71,163.73 |
| | | | | |
| TOTAL UNDISPUTED | | $821,553.91 | $855,831.33 | $0.00 |

## ANALYSIS OF ESTATE PROPERTY

The Real Property is the only estate property of value.


## PERSONAL PROPERTIES

The debtor holds the Real Property and accompanying personal property – all of which is liened or valueless.  See Appraisal in DE 8-1.


## BOOKS AND RECORDS

The books and records of the Debtor's affairs are held by the Debtor.


## EXECUTORY CONTRACTS

The Debtor leases property to an unrelated entity.  The rent is approximately $2,000 per month.  This is for another church – Rehoboth International Faith Center – which uses the premises Sunday evenings and Tuesday evenings.  The lease was executed January 1, 2011 for a term of two (2) years.


## TAX ASPECTS OF THE PLAN

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to the holders of certain Claims. The following summary does not address the U.S. federal income tax consequences to holders whose Claims are unimpaired or otherwise entitled to

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 20

payment in full in Cash under the Plan (e.g., Administrative Expense Claims, Priority Non-Tax Claims, and Other Secured Claims), or holders of Old Equity Interests that are extinguished without a distribution in exchange therefor. The following summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

This statement is merely a summary of certain material matters. Tax issues are now being delivered to the Creditors or claimants by the Debtor or his counsel. The following summary is one to which the Creditors are advised to review with their accountant or attorney. The cancellation of debt (COD) which creates issues of taxable events with certain exceptions. Bankruptcy dynamically subjects the debt structure to a significant change and tax events arising from such events can be issues under financial as well as tax accounting. These particular events are outside the control of the Debtor. The Debtor, who is definitionally insolvent by the Tax Code, is allowed to cancel his debt without creating a taxable event. If a third party is receiving the benefit of the same cancellation of indebtedness, but are not deemed to be insolvent, there may be imputation of income. COD income is defined under 18 U.S.C. § 108.

It is impossible and impractical to speak of all aspects of federal, state or local tax laws in this Disclosure Statement. The Debtor does not purport to be one to provide the complete tax analysis. All parties are advised to read Publication 908 of the IRS or download a copy of the same at http://www.irs.gov/pub/irs-pdf/p908.pdf.

IN VIEW OF THE COMPLEXITIES OF THE TAX LAWS, INTEREST HOLDERS AND CREDITORS ARE ENCOURAGED TO CONSULT THEIR OWN ADVISORS WITH RESPECT TO TAX ISSUES AFFECTING THEM AND THE DEBTOR. THE SUMMARY DISCUSSION IS NOT INTENDED AS A SUBSTITUTE FOR CAREFUL TAX ANALYSIS BY EACH

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 21

CREDITOR.   TAX CONSEQUENCES TO CREDITORS AND INTEREST HOLDERS MAY VARY.

## TAX CONSEQUENCES TO DEBTOR

As an insolvent individual, the tax consequences for cancellation of indebtedness are identified above.  If the Debtor is entitled to receive a refund for income taxes which were previously paid, those refunds may be offset to satisfy preexisting tax obligations.  Furthermore, the Debtor may also utilize any tax advantages derived from this bankruptcy confirmation process to alleviate any future tax consequences.  By allowing himself to utilize and tailor tax rights in the future based upon tax recognitions or realizations in the past, the Debtor will be more capable of making payments to the Creditors in the proposals outlined in the Plan.

It is believed that the amount of Unsecured Creditors in this Plan amount to the difference between the Adjusted Principal Debt and the amount of the Mortgage Final Judgment.  Foundation's foreclosure remedies will not be affected by this Plan.  No tax consequences should be denied from Foundation's claim.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, persons not holding their Claims as capital assets, financial institutions, tax-exempt organizations, persons holding Claims who are not the original holders of those Claims or who acquired such Claims at an acquisition premium, and persons who have claimed a bad debt deduction in respect of any Claims).

Debtor is a tax exempt entity, and no taxable event will arise.

**Accordingly, the following summary of certain U.S. federal income tax**

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 22

consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a Claim.

**IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims and Equity Interests are hereby notified that: (a) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of  Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.**

## DOCUMENTARY STAMP ISSUES FOR TRANSFER AND RECORDING NEW LOAN DOCUMENTS

No transfers are anticipated. If loan modification or new notes and mortgages are required, no documentary stamps will be charged.

## LITIGATION

At the time the Debtor filed this Chapter 11 petition, it was not engaged in litigation in the bankruptcy proceeding.  However, prior to the filing of the bankruptcy, the Debtor was involved in foreclosure proceedings.

## MANAGEMENT OF THE DEBTOR

Debtor will be managed by Tamika Jones.  Explanation of management's functions and compensation are outlined in **Exhibit "A."**

## INFORMATION OBTAINED BY PLAN PROPONENT

The Plan Proponent compiled this Disclosure Statement in reliance on his

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 23

personal knowledge.  The monthly financial reports, the unaudited financial reports, the appraisals of the assets, and other related documents were reviewed.

## MODIFICATION OF THE PLAN

The Plan may be modified at any time in accordance with § 1127 of Title 11 of the United States Code.

## EFFECTIVE DATE

The Effective Date will be the day the plan becomes final and the order of confirmation is not APPEALED nor is any underlying order entered which affects consummation of the Plan.

## SUMMARY OF THE PLAN

The Plan is the result of lengthy and detailed examination of the Debtor and the Real Property.  The Debtor believes the Plan offers the best and most appropriate opportunity for the Creditors to realize a maximum payment on their claims.  The Mortgagee will receive payment well in excess of the principal amount of the debt.  The Debtor acknowledges there will be a reduction in the original principal  obligation, but delivers to the Mortgagee a most fair treatment under these unusual and unique circumstances existing in the real estate market of Florida.

This description of the Plan is intended as a summary only.  Each Creditor shall refer to the Plan for details.  The Plan provides, in general, the Secured Creditors shall be affected by modifications of their loan instruments through the terms recited in this Plan.

The Plan designates Claims.  Whether or not scheduled, as liquidated or unliquidated, absolute or contingent, claims arising from relationships with the Debtor will exist and be treated in this plan.  The following is an outline of the Plan:

Class 1:       Priority Creditors

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 24

Class 2:      Secured – IRS lien for payroll taxes

Class 3:      Secured Creditor – Foundation Capital

Class 4:      Unsecured Nonpriority Creditors accepting $50.00 as full payment of claim

Class 5:      Unsecured Nonpriority Claims

Class 6:      Equity holders

An outline of the claims or rights of creditors for these respective classes is outlined in **Exhibit "C."**

For a detail of the analysis of the Plan, Creditors are asked to review the Plan.

Unclassified claims are not known to exist.  There are administrative expenses to the US Trustee. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within fourteen(14) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

Administrative Claims or that described as administrative holders do exist under 11 U.S.C. § 1123(a)(1) who are professionals under 11 U.S.C. § 1121 whose payment will be determined by separate order of the Court.

## <u>AMENDMENT OF CLAIMS</u>

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court.

In the United States Bankruptcy Court
Southern District of Florida
In re: New Life Holy Ghost Deliverance Ministries, Inc.
Case No.:11-21265-AJC
2nd Amended Disclosure Statement August 15, 2011
Page No. 25

## JURISDICTION OF THE COURT

The Bankruptcy Court retains jurisdiction over the following matters:

a)    To hear objections to claims;

b)    To entertain any adversaries brought pursuant to Sections 542-551 of Title 11 of the United States Code;

c)    To entertain declaratory jurisdiction over any of the defaults mentioned above and entitle transfer or property or revocation of confirmation pursuant to a default mentioned above;

d)    To enforce the terms and conditions of the plan;

e)    To modify the plan after confirmation pursuant to the Rules of Bankruptcy Procedure and Bankruptcy Code;

f)    To correct any defect, cure any omission, or any reconciliation of any inconsistency in the Plan of Reorganization;

g)    To enter any order concluding and terminating the case; and

h)    To handle those items listed in the Plan.


_____/s/_____

**DEBTOR-IN-POSSESSION**

_____/s/_____

**ATTORNEY FOR DEBTOR-IN-POSSESSION**

**DATED:   Monday, August 15, 2011**_____

Y:\Clients\12506\0002 Business-bkc\Disclosure Statement 2a.wpd

## MANAGEMENT OF THE DEBTOR

The Congregation will be run by the Reverend Sheena Gooden for spiritual purposes.

The financial management will be and led by Tamika Jones.  Tamika has handled church finances since 2010.  She as previously worked as a manager of a church, operations manager of a church, taught at a church school, and been active as an assistant preacher for the church.

A Board will exist to review the moth to month payments of the Church and will aid Tamika in financial issues of larger importance.  The Board's membership changes on an annual basis.  The Board has 7 members.

Tamika does not receive wages for her work.

Sheena Gooden does not receive wages for her work

Exhibit "A"

# Income Analysis of Debtor

**Figures are Estimated**

| SOURCE | AMOUNT |
|---|---|
| School handled by principals of the Debtor | $2,500.00 |
| Church Rental to Rehoboth | $2,000.00 |
| Congregation Gifts | $5,500.00 |
| Other – Concerts, Fund Drives etc | $1,500.00 |
| **TOTAL** | $10,500.00 |

Exhibit "B"

| Claim | Name | Unsecured Amount | Disputed? |
|---|---|---|---|
| 1 | US Bancorp | $48,289.50 | Yes |
| 2 | Ally Financial | $22,201.90 | Unknown |
| 3 | Great American Leasing | $22,506.24 | Yes |
| 4 | FIA Card | $6,416.86 | |
| 5 | IRS | $42,417.15 | Yes |
| 6 | Citibank | $2,735.21 | No |
| 7 | Citibank | $1,744.03 | Unknown |
| 8 | Foundation | $829,362.17 | Estimated |
| | | | |
| | **Total** | $975,673.06 | |
| | **Total Undisputed** | **$862,460.17** | |

Exhibit "C"